IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TALISHA HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 25-cv-12129 |
| v. | ) | |
| | ) | Honorable Joan B. Gottschall |
| ARB GAMING LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

The defendant in this proposed class action, ARB Gaming LLC, which also does business as "Modo," has filed a motion under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, to compel plaintiff Talisha Harris to arbitrate her claims individually, as required by the Terms of Use dated August 4, 2025, for its modo.us "social casino". *See* Mot. to Compel Arb., Dkt. No. 20; Terms of Use, Decl. of W. Colello Ex. A, Dkt. No. 21-1; Colello Decl. ¶ 9, Dkt. No. 21-1. Harris argues that the Terms of Use are unenforceable and unconscionable because they are supported by unlawful gambling consideration. But, as explained below, Modo's Terms of Use include an agreement to submit disputes over contract formation and enforceability to an arbitrator, rather than to the court. Since the FAA requires such agreements to be enforced in the same manner as other contractual terms, *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148–49 (2024), ARB Gaming's motion to compel arbitration is granted.

### BACKGROUND

ARB Gaming is a Delaware limited liability company headquartered in Florida. Am. Compl. ¶ 16, Dkt. No. 5. Modo is, according to the complaint, "one of the most popular and profitable casino and sweepstakes gaming website[s] on the planet." Am. Compl. ¶ 2. For its part, ARB Gaming characterizes Modo as a "social casino offering free-to-play entertainment." *See* Am. Compl. ¶¶ 15–16, 65 (quotation in ¶ 65). Modo players do not directly wager cash. *See*

Am. Compl. ¶¶ 80–83. Rather, "users ostensibly purchase 'virtual coins' but receive 'Sweepstake Coins'—with real-world value—for use in casino-style games of chance." Am. Compl. ¶ 80; *see also* Am. Compl. ¶¶ 81–82.

Harris lives in South Holland, Illinois. Am. Compl. ¶ 15. She pleads that, between September 2024 and October 2025, she lost approximately $2,000 playing sweepstakes and games of chance on Modo. *See* Am. Compl. ¶¶ 23–95. The amended complaint charges that ARB Gaming is operating an online casino meeting the definition of a "gambling device" under Illinois law, as that phrase is defined in 720 Ill. Comp. Stat. 5/28-2(a). Am. Compl. ¶ 66. A detailed definition of the term "gambling" can be found in the first section of the statute; this complex definition generally encompasses unlawful or unlicensed gambling as defined in the statute. *See id.* § 5/28-1(a)–(b); *Moushon v. AAA Amusement, Inc.*, 641 N.E.2d 1201, 1202–03 (Ill. App. Ct. 4th Dist. 1994). Harris alleges that Modo meets the definition of "gambling" in § 5/28-1(a), a contention that defendant vigorously disputes. Harris's arguments center on the following provisions of Illinois law regarding unlawful gambling: "[a]ll . . . contracts [or] agreements . . . where the whole or any part of the consideration thereof is for any money or thing of value, won or obtained in violation of [Article 28 of the Illinois Criminal Code referencing gambling] are null and void." 720 Ill. Comp. Stat. 5/28-7(a).

Seeking to represent a class of Illinois Modo customers, Harris brings claims under the Illinois Loss Recovery Act, 720 Ill. Comp. Stat. 5/28; under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1; and for unjust enrichment. *See* Am. Compl. ¶¶ 96–147. The first statute, the Illinois Loss Recovery Act, creates a private right to sue: "Any person who by gambling shall lose to any other person, any sum of money or thing of value, amounting to the sum of $50 or more and shall pay or deliver the same or any part thereof, may sue for and recover the money or other thing of value, so lost and paid or delivered, in a civil action against the winner thereof, with costs . . . ." 720 Ill. Comp. Stat. 5/28-8(a), amended by Ill. Pub. Act. No. 140-468, § 140-15 (eff. June 16, 2026) (*see* § 999 for effective date).

2

ARB Gaming filed two motions in January 2026. Dkt. Nos. 18, 20. The first argues that the court lacks personal jurisdiction because ARB Gaming does not have the requisite minimum contacts with Illinois. *See* Mem. Supp. Mot. to Dismiss, Dkt. No. 19. ARB Gaming also filed the instant motion to compel Harris to participate in individual arbitration. Dkt. No. 20. The parties thereafter informed the court in a joint motion that they had agreed to suspend briefing on the motion to dismiss until the court ruled on ARB Gaming's motion to compel arbitration. Jt. Mot. for Extension of Time 3–4, Mar. 30, 2026, Dkt. No. 28. The court directed the parties to file a short memorandum of law "explaining how the court can decide the motion to compel before it decides jurisdictional objections." Minute Order, Mar. 31, 2026, Dkt. No. 29. The parties responded with a joint memorandum of law arguing that by moving to compel arbitration, ARB Gaming did not waive its personal jurisdiction defense, and that this court does not need to decide whether it has personal jurisdiction before ruling on the motion to compel arbitration. *See* Jt. Mem. 4–5, Dkt. No. 30. The court proceeds as the parties have agreed.[1] *Cf. Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010).

### FACTS AND THE TERMS OF USE

The following facts are not disputed. "[T]o have accessed, used, or played games on ARB's Platform and services or to make any purchases, ARB's Platform required all customers to first create a customer account and register a user account. This process required users to take affirmative steps to agree to the applicable Terms." Colello Decl. ¶ 9. To create an account, a modo.us visitor must check a box indicating agreement to be bound by Modo's Terms of Use (the full document is made available via a "Terms of Service" hyperlink on the account creation

---

[1] As authority for the proposition that personal jurisdiction need not be resolved before a motion to compel arbitration, the parties rely on the Sixth Circuit's decision in *Gerber v. Riordan*, 649 F.3d 514, 518–20 (6th Cir. 2011), and district court decisions following it. *See, e.g.*, *Ambrosia v. Blazesoft Ltd.*, 2025 WL 2976477, at *2 (N.D. Ill. Oct. 21, 2025). A Fifth Circuit case not cited by the parties holds that a challenge to personal jurisdiction must be addressed before ruling on a motion to compel arbitration. *Hines v. Stamos*, 111 F.4th 551, 562–64 (5th Cir. 2024). The Fifth and Sixth circuit cases are, of course, not binding on this court, and the parties have not briefed the complex and difficult legal questions they raise.

page").[2] *See* Colello Decl. ¶¶ 8–13 (including a screenshot). Harris does not dispute that on March 9, 2025, she registered a modo.us account, which she "last logged into" on November 6, 2025. Colello Decl. ¶ 17; *see id.* ¶¶ 29–30. Nothing in the record indicates that Harris attempted to opt out of the arbitration provisions of Modo's Terms of Use. *See id.* ¶ 18.

The Terms of Use at issue, dated August 4, 2025, contain a choice of law clause selecting, with exceptions not facially applicable here, the substantive law of Delaware. *See* Terms § 20.1. Yet the parties have not briefed choice of law or cited cases applying Delaware law. Entitled "Binding Arbitration Agreement and Class Action Waiver," § 17 of the Terms of Use spans seven pages and 17 numbered subsections.[3] *See* Colello Decl. Ex. A at 18–24. Excerpts follow:

> 17.1 Acceptance of Terms. By using, or otherwise accessing the Service, or clicking to accept or agree to the Terms where that option is made available, you confirm that you have read and accept and agree to this Agreement. . . .
>
> 17.2 Scope of Agreement to Arbitrate. You and Modo agree that any past, pending, or future dispute, claim or controversy arising out of or relating to any purchase or transaction by you, your access to or use of any Platform or the Service, or to this Agreement, the Terms of Use, or Privacy Policy (including without limitation any dispute concerning the breach, enforcement, construction, validity, interpretation, enforceability, or arbitrability of this Agreement or the Terms of Use) (a "Dispute"), shall be determined by arbitration, including claims that arose before acceptance of any version of this Agreement. In addition, in the event of any Dispute concerning or relating to this Agreement — including the scope, validity, enforceability, or severability of this Agreement or its provisions, as well as the arbitrability of any claims—you and Modo agree and delegate to the Arbitrator the exclusive jurisdiction to rule on their own jurisdiction over the Dispute, including any objections with respect to the scope, validity,

---

[2] ARB Gaming revised its Terms of Use more than once between March 2025, when Harris created her modo.us account, and the date of the instant motion to compel. ARB Gaming has filed a declaration of one of its officers averring that the material terms of the arbitration provisions did not change "during the relevant time period." Colello Decl. ¶ 15. The declaration does not define "relevant time period." *See id.* at ¶¶ 14–17. The record contains only one version of Modo's Terms of Use dated August 4, 2025. *Id.* Ex. A. That document states at least twice that it "supersedes and replaces" all prior terms. *Id.* at 1, ¶ 19.7 at 25. Harris does not argue that any differences among the prior versions of Modo's Terms of Use affect the resolution of ARB Gaming's pending motion to compel arbitration.

[3] Section 17 and the surrounding sections of the Terms of Use contain what appears to be a recurring drafting error. Section 17 is consistently referred to as Section 16, possibly due to a renumbering error after an insertion. *E.g.*, Terms of Use 18. Neither party contends that this error affects the pending motion to compel arbitration.

enforceability, or severability of this Agreement or its provisions, as well as the arbitrability of any claims or counterclaims presented as part of the Dispute.

17.3 Notwithstanding the above provision and Agreement to Arbitrate, all parties retain the right to seek relief in a small claims court for disputes or claims solely within the scope of a small claim's court jurisdiction. . . .

\* \* \* \*

## INITIATING ARBITRATION UNDER JAMS RULES

17.10 . . . You and Modo agree that JAMS ("JAMS") will administer the arbitration under its Comprehensive Arbitration Rules and Procedures ("JAMS Rules") in effect at the time arbitration is sought ("JAMS Rules"). The parties further agree that, to the extent applicable, the JAMS Mass Arbitration Procedures and Guidelines shall apply. . . .

\* \* \* \*

17.10.5 Unless and only to the extent prohibited under JAMS Rules, the arbitration will be held in Wilmington, Delaware or, at either your or our election, will be conducted telephonically or via other remote electronic means;

\* \* \* \*

## OPTION AND PROCEDURE TO OPT OUT OF ARBITRATION

\* \* \* \*

**17.14 OPT-OUT. IF YOU DO NOT WISH TO AGREE TO THE PROVISIONS OF THIS SECTION 16 AGREEMENT REQUIRING ARBITRATION AND CLASS ACTION WAIVER AND YOU HAVE NOT PREVIOUSLY AGREED TO AN ARBITRATION PROVISION IN CONNECTION WITH YOUR USE OF OUR SERVICE, YOU MUST, WITHIN THIRTY (30) DAYS OF ENTERING THIS AGREEMENT, SEND A WRITTEN NOTICE OF YOUR DECISION TO OPT OUT TO ARB GAMING LLC, ATTN: ARBITRATION OPT-OUT, 13802 N SCOTTSDALE RD SUITE 151-94 SCOTTSDALE AZ 85254-3403, WITH THE SUBJECT "OPT-OUT." \*\*REQUESTS TO**

5

**OPT OUT AFTER THE 30 DAY PERIOD SHALL NOT BE EFFECTIVE.\*\***

\* \* \* \*

**WAIVER OF CLASS RELIEF AND COLLECTIVE ACTION**

**17.16 TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NEITHER YOU NOR MODO SHALL BE ENTITLED TO ARBITRATE OR LITIGATE ANY DISPUTE IN A REPRESENTATIVE CAPACITY. YOU MAY ONLY ARBITRATE OR LITIGATE ON AN INDIVIDUAL CLAIMS BASIS ONLY AND FOR YOUR OWN LOSSES ONLY. UNDER THIS AGREEMENT, YOU MAY NOT PROCEED IN ARBITRATION OR COURT AS A CLASS REPRESENTATIVE, MEMBER OR PART OF ANY PROPOSED CLASS, COLLECTIVE ACTION, PRIVATE ATTORNEY GENERAL SUIT, QUI TAM ACTION OR ANY REPRESENTATIVE PROCEEDING, OR OTHERWISE SEEK TO RECOVER ON BEHALF OF OTHERS OR FOR THE BENEFIT OR USE OF OTHERS IN ANY TYPE OF CLAIM OR ACTION. YOU AND MODO ARE EACH WAIVING RESPECTIVE RIGHTS TO PARTICIPATE IN A CLASS ACTION. BY ACCEPTING THIS AGREEMENT, YOU GIVE UP YOUR RIGHT TO PARTICIPATE IN ANY PAST, PENDING OR FUTURE CLASS ACTION OR ANY OTHER CONSOLIDATED OR REPRESENTATIVE PROCEEDING, INCLUDING ANY PROCEEDING EXISTING AS OF THE DATE YOU AGREED TO THIS AGREEMENT.**

Colello Decl. Ex. A at 19–24 (emphasis in original).

### ANALYSIS

When it enacted the FAA, Congress adopted a "liberal federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Thus, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Id.*; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Nevertheless, "[W]hile arbitration is a favored method of dispute resolution, the courts have consistently cautioned that an agreement to arbitrate is a matter of contract. A party 'cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Hartford Accident & Indem. Co. v. Lin*, 97 F.4th 500, 511 (7th Cir. 2024) (quoting *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017)) (citation modified). A motion to compel

6

arbitration should be granted where it is shown that "(1) there was a valid agreement between the parties to arbitrate, (2) the claim at issue falls within the scope of that agreement, and (3) a party has nevertheless refused to arbitrate." *Harris v. W6LS, Inc.*, 177 F.4th 777, 781 (7th Cir. 2026) (citing *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 702 (7th Cir. 2022)).

Two elements are not contested. Harris has refused to arbitrate her claims, satisfying element three. *See* Resp. Opp'n Mot. to Compel Arb. 15, Dkt. No. 32. Evidence in the record demonstrates, without contradiction, that Harris created an account on modo.us, thereby agreeing to be bound by Modo's Terms of Use. *See* Colello Decl. ¶¶ 11–17. Generally speaking, this type of clickwrap agreement, that is, conveying assent by clicking a website checkbox, suffices to form a contract, and Harris does not argue otherwise here. *See generally Domer v. Menard, Inc.*, 116 F.4th 686, 692–97 (7th Cir. 2024) (discussing contract formation principles as they apply to online clickwrap and browsewrap agreements); *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012) (same). Finally, Harris does not dispute that the scope of the agreement to arbitrate, quoted above, in § 17 of Modo's Terms of Use broadly encompasses the three claims pleaded in her amended complaint. What is at issue is Harris's challenge to the enforceability of Modo's Terms of Use. *See* Resp. Opp'n Mot. to Compel Arb. 8–15.

Harris challenges Modo's Terms of Use on three grounds. *See id.* First, she asserts that under Illinois law, unlawful gambling contracts are unenforceable because they are void and against public policy. *Id.* at 5–8. Harris's second and third arguments invoke the contractual doctrine of unconscionability. Specifically, she maintains that Modo's Terms of Use are procedurally and substantively unconscionable for reasons similar to those she advances to support her argument that Modo's Terms of Use are void. *See id.* at 10–15.

The threshold question briefed by the parties concerns the allocation of adjudicatory authority between the court and the arbitrator. The Supreme Court has explained that contracting parties may agree to submit "different kinds of disputes" to arbitration. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024). The Supreme Court has described these as first, second, and third-order disputes. *See id.* at 148–49. "A contest over the merits of the disputes is a first-order

disagreement, . . . the resolution of which depends on the applicable law and relevant facts." *Id.* at 148. A second-order dispute concerns whether the contracting parties "agreed to arbitrate the merits," and a third-order dispute is also possible over "who should have the primary power to decide the second matter." *Id.* at 148–49 (citation modified). "Under contract principles, these second- and third-order questions are also matters of consent." *Id.* at 149. Put slightly differently, contract law determines whether and to what extent the parties have agreed to arbitrate arbitrability questions "such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center., W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010) (citations omitted).

Section 17.2 of Modo's Terms of Use employs the following language to delegate second-order disputes to the arbitrator: "You and MODO agree that any past, pending or future dispute, claim or controversy . . . (including without limitation any dispute concerning the breach, enforcement, construction, validity, interpretation, enforceability or arbitrability of this Agreement or the Terms of Use) . . . shall be determined by arbitration." Dkt. No. 21-1 Ex. A at 19. In addition, the Terms of Use, § 17.2, provide for arbitration under JAMS rules, which state that issues of jurisdiction and arbitrability "shall be submitted to and ruled on by the Arbitrator." JAMS Streamlined Arbitration Rules and Procedures, R. 8(b) (June 1, 2021), https://www.jamsadr.com/rules-streamlined-arbitration#Rule-8 [https://perma.cc/3NA8-4Z8L]. Incorporating JAMS rules or rules containing similar delegation language "provides 'clear and unmistakable evidence' that the parties agreed to arbitrate 'arbitrability.'" *Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 458 (N.D. Ill. 2021) (Gottschall, J.) (quoting *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020)) (collecting citations); *see id.* at 459.

The express terms of § 17.2, including the provision incorporating JAMS rules, broadly delegate to the arbitrator the task of resolving second-order disputes concerning contract formation and enforceability. Harris offers no alternative construction of the text or structure of § 17. *See* Resp. Opp'n Mot. to Compel Arb. 8–10.

8

Since Harris's enforceability challenges fall within the scope of § 17, the question becomes whether the arbitration clause is severable. ARB Gaming contends that the Supreme Court's decision in *Rent-a-Center* supplies the operative rule: "[W]e . . . require the basis of [a contractual] challenge to be directed specifically to the agreement to arbitrate before the court will intervene." 561 U.S. at 71 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967)). The Court devoted several pages of its opinion to analyzing the plaintiff's filings in the district court, on appeal, and before the Supreme Court to determine the breadth of his challenge to an agreement containing an arbitration clause. *See id.* at 72–76. This analysis was necessary, the Court explained, because "unless [the defendant] challenged the delegation provision specifically, we must treat it as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* at 72.

Applied here, the rule articulated in *Rent-a-Center* dictates that unless Harris attacks the delegation provisions in § 17 of the Terms of Use specifically, her challenge to the validity of the contract as a whole must be left for the arbitrator. *See id.* Harris makes plain in her response brief that she intends to challenge the enforceability of the Terms of Use as a whole. For example, she argues that "the illegality defect applies equally to the arbitration provision and the contract as a whole." Resp. Opp'n Mot. to Compel Arb. 10. Since Harris's challenges to enforceability go to the Terms of Use as a whole, under *Rent-a-Center*, § 17's agreement to delegate second-order disputes must be given effect, and Harris's challenges to the enforceability of those terms must be left for the arbitrator. *See Rent-a-Center*, 561 U.S. at 72; *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006); *Ambrosia v. Blazesoft Ltd.*, 2025 WL 2976477, at *4–5 (N.D. Ill. Oct. 21, 2025); *Ball v. Skillz Inc.*, 2020 WL 6685514, at *5 (D. Nev. Nov. 12, 2020), *aff'd sub nom. Roe v. Skillz, Inc.*, 858 F. App'x 240 (9th Cir. 2021).

Against this authority, Harris points to *dicta* in the Supreme Court's decision in *Coinbase*. The *Coinbase* Court stated that "[W]here a challenge applies 'equally' to the whole contract and to an arbitration or delegation provision, a court must address that challenge." 602 U.S. at 151

9

(quoting *Rent-a-Center*, 561 U.S. at 71). Harris maintains that this language requires the court, not the arbitrator, to address her voidness challenge and unconscionability arguments because she contends that they invalidate Modo's Terms of Use in their entirety. *See* Resp. Opp'n Mot. to Compel Arb. 9–10. Read in isolation, the language of *Coinbase*, quoted *supra*, would seem to support Harris's position. But as the Seventh Circuit explained after *Coinbase*, "a court may still order arbitration if a party fails to 'challenge[ ] specifically' the arbitration (or delegation) provision rather than 'the contract as a whole.'" *W6LS*, 177 F.4th at 782 (quoting *Rent-A-Center*, 561 U.S. at 70–71).

As Judge Kennelly explained earlier this year, there is no indication that the Supreme Court intended in *Coinbase* to overrule silently the holding of *Rent-a-Center* or its predecessor cases. *Mahmoud v. Gallagher Bassett Servs., Inc.*, 2026 WL 622410, at *5–6 (N.D. Ill. Mar. 5, 2026) (quoting *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000)). Rather, in context, the above-quoted dictum in *Coinbase* appears to have been a response to a circuit split concerning a separate question (one not presented here). *See id*. This court agrees that after *Coinbase*, "it remains true that a validity challenge must be directed specifically to the delegation provision to avoid being delegated to arbitration." *Id.* at *6.; *see also Ambrosia*, 2025 WL 2976477, at *3–4. Accordingly, the rule of *Rent-a-Center* dictates that the parties' agreement to delegate second-order arbitrability disputes must be enforced by the court, and Harris's contractual challenges are for the arbitrator.

## CONCLUSION

For the reasons stated, ARB Gaming's motion to compel arbitration, Dkt. No. 20, is granted. This action is stayed while the parties arbitrate Harris's claims in accordance with this order and Modo's Terms of Use dated August 4, 2025, Dkt. No. 21-1 Ex. A. ARB Gaming's motion to dismiss the complaint for lack of personal jurisdiction, Dkt. No. 18, is denied without

prejudice.  The parties are instructed to file a status report on the progress of arbitration within sixty days, that is, on or before September 21, 2026.

Date: July 21, 2026

/s/ Joan B. Gottschall
United States District Judge

11